# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

>    *Plaintiff*,

v.                                                    **Civ. No. 03-538 JP / RHS**

$23,100.00 IN U.S. CURRENCY,

>    *Defendant*,

GLEN ALBIN FOR JOHN ALBIN ESTATE,

>    *Claimant*.

### PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

The United States submits the following Proposed Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1.      On October 20, 2002, New Mexico State Police (NMSP) Patrolman C.S. Hooper stopped a maroon Dodge Stratus speeding westbound on Highway 54 near Tucumcari, New Mexico.

2.      As Officer Hooper approached the vehicle, he could smell a odor that he recognized as burnt marijuana.  Officer Hooper made contact with the driver, identified as James Brain Underdal and the passenger, identified as John Michael Albin.

3.      Officer Hooper asked Underdal for his driver's license and registration.  Underdal handed the officer a State of Missouri commercial driver's license in the name of John B. Underdal.  The passenger, Albin, handed Officer Hooper the rental contract for the vehicle.  The rental agreement was signed on October 18, 2002 and revealed that the vehicle, registered to Budget Rental Car Company in Kansas City, Missouri, was to be returned in Kansas City on

1

October 25, 2002.

4.      Officer Hooper issued Underdal signed a citation and he agreed to pay the fine by mail.  Underdal told Officer Hooper he was enroute to Phoenix, Arizona to visit his son and planned to stay in a hotel for about two days and then return to Kansas City, Missouri.  Underdal also stated that John Albin was traveling to Phoenix to visit his first grandchild.

5.      Officer Hooper went to the vehicle to inspect the VIN and Nader sticker.  Upon approaching the vehicle, Officer Hooper initiated a conversation with John Albin.  Albin stated that he was traveling to Phoenix, Arizona to visit his friend, "May", but he did not know May's last name.

6.      Based on the conflicting statements from Underdal and Albin, and the odor of burnt marijuana emanating from the interior of the vehicle, Officer Hooper requested consent to search the vehicle.

7.      Underdal consented in writing to a search of his personal belongings, but deferred the officer's search request for the car to Albin.  Underdal's personal property consisted solely of a shaving kit.

8.      Officer Hooper asked Albin to exit the car.  Albin agreed to answer questions. Officer Hooper asked Albin if he had large amounts of cash over $10,000.00 in the vehicle. Albin started to respond but then stopped talking and simply stated "no".  As he stated "no", Albin averted his eyes from the officer and lowered his head toward the ground. When questioned about marijuana, Albin continued to look at the ground while backing away from the officer.

9.      Officer Hooper requested and received written permission from Albin to search

the vehicle.

10.     Officer Hooper found a small bag containing a used roach clip and rolling papers under the front passenger seat. Officer Hooper then asked Albin and Underdal where the marijuana was hidden.  Albin retrieved a clear plastic bag containing marijuana from his shoe.

11.     Albin told Officer Hooper that there was $23,000.00 in the trunk of the vehicle.  Officer Hooper requested back-up units.

12.     Officer Hooper searched the vehicle's trunk.  Inside the trunk he located a red backpack.  The backpack contained five bundles of United States currency ($ 23,100) wrapped with rubber bands, an orange pill bottle and a silver tin.  The silver tin concealed numerous rolls of rolling papers, a clear plastic package of illegal psilocybin mushrooms, and one clear plastic package containing raw marijuana.  The orange pill bottle contained approximately 18 Xanax pills.  The label of the pill bottle had been removed.  The trunk also contained a plastic clothes basket, inside of which was a large hunting knife with a 9 inch blade.

13.     Officer Hooper also discovered two empty black duffel bags in the trunk.

14.     When back-up patrol officers arrived at the scene, James Underdal removed something from his pants and threw it to the ground between his handcuffs.  Officer Dennis O'Leary asked Underdal what he had thrown and he replied "nothing".  Officer O'Leary then found a small metal pipe with marijuana residue by Underdal's feet.

15.     Officers arrested Albin and Underdal on felony drug charges and transported them to the Quay County Detention Center.  On October 21, 2002, a criminal complaint was filed against John Michael Albin in Quay County, New Mexico, alleging felony offenses: 1)Possession of a controlled substance (Psilocybin), 2) Possession of marijuana, more than one

but less than eight ounces; 3) Possession of a controlled substance (Xanax); 4) Possession of drug paraphernalia; and 5) Unlawful carrying of a deadly weapon (knife with a 9 inch blade).

16.     On December 15, 2002, the criminal complaint was dismissed and refiled as a five-count misdemeanor.

17.     Pursuant to a plea agreement, John Michael Albin was sentenced on July 15, 2003 to 364 days in Quay County Detention Center for possession of an illegal controlled substance (misdemeanor), with costs and 364 days unsupervised probation.  The sentence was deferred but was subject to reinstatement if Albin violated probation.  The other four counts were dismissed as part of the plea agreement.

18.     The United States filed a judicial forfeiture action against the defendant property on May 7, 2003 in federal district court, pursuant to the Federal Controlled Substances Act.

19.     Albin has a prior arrest in 1977 for possession with intent to distribute Dilaudid and Quaaludes.  Underdal has a prior arrest in 1997 for possession of methamphetamine and marijuana.

20.     Drug couriers commonly transport and conceal bundled currency and deliver the cash in exchange for controlled substances.

21.     Drug couriers most commonly transport currency on routes traveling from eastern parts of the United States to drug source cities in border states (i.e. Arizona, New Mexico) where the money can be exchanged for illegal drugs.  Illegal drugs are then transported to the eastern parts of the United States.

22.     Phoenix, Arizona is a major source city for illegal controlled substances.

23.     Drug traffickers commonly carry empty duffel bags or other containers to stash,

4

carry and transport illegal drugs after the drugs are purchased.

24.     Drug and money couriers commonly use rental cars to prevent seizure and forfeiture of their personal vehicles.

25.     John Albin did not provide any explanation to Officer Hooper for the presence of empty duffel bags in the car he had rented.

26.     John Albin did not provide the arresting officer with any explanation as to why he carried this large amount of cash with him on October 20, 2002.

27.     John Albin died on January 2, 2004 in Kansas City, Missouri.  The Court granted a motion to substitute Albin's estate as the claimant in this action.

28.     Although the claimant estate contends that Albin had received an inheritance, claimant estate has failed to trace the source of the $23,100 in U.S. currency or explain why John Albin was carrying this large amount of cash on October 20, 2002.

29.     Claimant presented the following in support of his contention that John Albin received from his mother or her estate:

**6/26/01**  -     $   2,000 - (copy of a check) gift from Alfrida Albin

**9/6/01**    -     $ 10,756.59 - (hand-written notes) 1/3 beneficiary of checking account

**9/14/01**  -     $   4,243.89  -   1/3 beneficiary of life insurance

**11/19/01** -     $   8,979.72  -   sale of parent's home

**10/16/02** -     $   2,841.32   - 1/3 of Albin's estate

Total          $ 28,821.52

30.     No evidence was presented to show that John Albin received cash from any of the above sources.

5

31.     Albin had not been employed for years prior to the seizure and was on Medicaid at that time.  His estate representative has produced one bank account with a balance of approximately $43.53.

32.     Claimant estate failed to provide financial information showing John Albin's income or expenses prior to the seizure in October 2002.

33.     Claimant estate failed to establish through tracing, or otherwise, that the money John Albin received from his mother was the source of the currency that was seized.

34.     Claimant estate did not explain the purpose of John Albin's trip.

## CONCLUSIONS OF LAW

1.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355.

2.     This forfeiture action is governed by 21 U.S.C. § 881(a)(6), which provides in pertinent part that the following is subject to forfeiture to the United States:

All moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter [the Controlled Substances Act].

3.     This case is also governed by 18 U.S.C. § 983, enacted as part of the Civil Asset Forfeiture Reform Act of 2000 (CAFRA).

4.     The United States' burden of proof in this case is to establish by a preponderance of the evidence that the property is subject to forfeiture.  18 U.S.C. § 983(c)(1); United States v.

<u>Lot Number 1 at Lavaland Annex</u>, 256 F.3d 949, 956 (10th Cir. 2001). The Court examines the aggregate of the facts to determine whether the United States has met its burden.  <u>See</u> <u>United States v. $149,442.43</u>, 965 F.2d 868, 875-876 (10th Cir. 1992).  The United States is not required to link property derived from a criminal offense to a specific transaction. <u>Id</u>.

5.      The claimant bears the burden of proving that the claimant is an innocent owner of the property by the preponderance of the evidence. 18 U.S.C. § 983(d)(1).  To meet this burden, claimant must prove that he is an owner and (i) did not know the conduct giving rise to forfeiture; or (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property.  18 U.S.C. § 983(d)(2)(A).

6.      The United States has established by a preponderance of the evidence that the currency constituted illegal drug proceeds or was intended to be used for illegal drug activities by John Albin.  The totality of the facts giving rise to this conclusion include the following:

a.      The large amount of currency ($23,100). (A large amount of currency itself carries substantial probative value.

        <u>United States v. $149,442.43</u>, 965 F.2d 868, 876 (10th Cir. 1992);  <u>United States v. $67,220.00 in U.S. Currency</u>, 957 F.2d 280, 285 (6th Cir.1992); <u>United States v. $215,300 in U.S. Currency</u>, 882 F.2d 417, 419 (9th Cir.1989), <u>cert</u>. <u>denied</u>, 497 U.S. 1005 (1990)(noting that claimant's possession of an extremely large amount of cash is itself "strong evidence that the money was furnished or intended to be furnished in return for drugs"));

b.      Both Albin and Underdal had prior drug related arrests and involvement with illegal drugs;

c.      Driving a rental car that originated in Kansas City, Mo.;

d.      Enroute to a known major source city (Phoenix) for obtaining illegal drugs;
See  United States v. $22,474 in U.S. Currency, 246 F.3d 1212, 1216 (9th Cir. 2001)(travel route to Phoenix a probative factor.)

e.      Odor of burnt marijuana emanating from the vehicle;

f.      Vehicle occupants providing inconsistent and incomplete statements of the trip's purpose;

g.      Albin's nervous behavior and false statements to the officer about not carrying any money or drugs;

h.      Retrieval of a bag of marijuana from Albin's person (inside his shoe) and a marijuana pipe with residue from Underdal;

i.      Albin's statement to officer that he was going to Phoenix to stay with his friend "May", but he did not know May's last name;

j.      Two empty duffel bags in the trunk of the car for which no legitimate explanation exists;

k.      Illegal drugs, including marijuana, psilocygbin mushrooms, numerous rolls of rolling papers, and other drug paraphernalia contained in a red backpack in direct proximity to the currency;

l.      No plausible legitimate explanation for the proposed use or purpose for carrying the cash;

m.      Albin's long-term unemployment;

n.      Albin's conviction in New Mexico state court for possession of an illegal

controlled substance as a result of this traffic stop and arrest.

      o.      Albin's connection to a known criminal (Underdal). See  United States v. $36,674 in U.S. Currency, 103 F.3d 1048 (1st Cir. 1997).

See United States v. $30,670 in U.S. Funds, 2002 WL 31093587 (N.D.Ill. 2002)(dog sniff, purchase of one-way ticket with cash, quantity of currency concealed in woman's girdle on courier's person, and implausible story satisfied preponderance of the evidence standard); United States v. $ 22,991.00, More or Less, in U.S. Currency, 227 F.Supp.2d 1220 (S.D. Ala. 2002)(dog sniff, quantity of currency, history as drug user/dealer, and presence of drugs in car sufficient to establish forfeitability by preponderance of the evidence); United Statesv. $345,510.00 in U.S. Currency, 2002 WL 22040 (D. Minn. 2002)(following United States v. $141,770.00, 157 F.3d 600 (8th Cir. 1998): positive dog alert to suitcase in baggage compartment of Amtrak train, odor of marijuana, quantity of currency and packaging in plastic and paper bags, and inconsistent story sufficient to establish forfeitability by preponderance of the evidence); United States v. $118,170.00 in U.S. Currency, 69 Fed. Appx. 714, 2003 WL 21659445 (6th Cir. 2003)(presence of small amount of marijuana, dog alert, quantity of currency, evidence of involvement in prior drug deal, and tax returns showing lack of legitimate income was sufficient to establish forfeitability of currency by preponderance of the evidence); United States v. $99,990 in U.S. Currency, 69 Fed. Appx. 757, 2003 WL 21698849 (6th Cir. 2003)(large amount of currency, manner of packaging, false statements, dog sniff, evasive driving, and 10-year-old marijuana conviction established forfeitability of seized currency by preponderance of the evidence).  See also United States v. $242,484 in U.S. Currency, 389 F.3d 1149 (11th Cir. 2004)(en banc)(quantity and packaging of cash, travel to and from source city, dog sniff, courier's

9

inability to identify person from whom she received cash or to provide receipts, improbable and inconsistent story, and true owner's failure to file a claim were sufficient to establish probable cause.)

7.      Even if the Court assumes the currency was from a legitimate source, the facts evidence a purpose to purchase illegal drugs: travel to a drug source city, empty duffel bags, drugs and paraphernalia, drug history, inconsistent and incomplete travel stories and an unexplained large amount of cash in close proximity to illegal drugs. United States v. U.S. Currency in the Amount of $40,000, 1999 WL 1011938 (E.D.N.Y. 1999)(under section 881(a)(6), whether claimant actually derived cash from gambling winnings is irrelevant; if he intended to exchange it for a controlled substance, legitimate source does not matter).

8.      Claimant estate has failed to establish an innocent owner defense to forfeiture by a preponderance of the evidence.

9.      Claimant estate has failed to establish a legitimate source for the currency by a preponderance of the evidence. Implausible explanation of a legitimate source is not sufficient. See United States v. $149,442.43, 965 F.2d 868, 875-76 (10th Cir.1992); United States v. Two Parcels of Real Property Located in Russell County, Ala., 92 F.3d 1123, 1129 (11th Cir. 1996).

10.     Based upon the above findings and conclusions of law, the defendant $23,100 in U.S. currency will be forfeited to the United States and all right, title, and interest in the property vested in the United States.  An appropriate Judgment and Order of Forfeiture will be entered.

Respectfully Submitted,

DAVID C.  IGLESIAS
United States Attorney


(Electronic signature)
Stephen R. Kotz
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, NM 87103
(505) 346-7274


**Certificate of Service**


I HEREBY CERTIFY that a true
copy of the foregoing document
was mailed to opposing counsel

Shannon Oliver, Esq.
Kennedy & Oliver, P.C.
1000 Second Street NW
Albuquerque, NM 87102

Glenn Smith Valdez
1650 Camino Del Valle SW
Albuquerque, NM 87105


on   23rd   day of February, 2005.


(Electronic signature)
Stephen R. Kotz
Assistant U.S. Attorney


D:\LLux\FOFConclLawForf\$23,100FOFCofLFINAL.wpd